[L. A. No. 16927.   In Bank.—September 10, 1940.]

AVERIL E. PROUTY, Respondent, v. CHENEY RUSSELL PROUTY, Jr., Appellant.

Frank P. Doherty and Gerald E. Kerrin for Appellant.

Leonard Wilson, Clifford Thoms and Robert P. Dockeray for Respondent.

CARTER, J.—This is an appeal from an order of the Superior Court of Los Angeles County denying appellant's application for modification of a final decree of divorce with respect to the custody of a minor child.

Appellant and respondent were married at Santa Ana, California, on February 2, 1927. A daughter, whose custodial status is the subject of this proceeding, was born to them on October 15, 1928. The spouses separated on June 12, 1934, and, on November 23, 1934, an interlocutory decree of divorce by default was entered in favor of the respondent wife, giving her custody of the child, subject to appellant's right of visitation. A final decree of divorce was entered on December 5, 1935. In October, 1937, defendant instituted the present proceeding to have the divorce decree modified to give him sole and exclusive custody of the minor child. After a hearing, which consumed five days, an order was entered denying appellant the relief sought, and from that order he now appeals.

Appellant contends that the order of the trial court is against the evidence and against the law—that it indicates an utter disregard for the best interests of the child and constitutes an abuse of discretion.

It is the settled rule that, in determining who should have the custody of the minor children of the parties to divorce actions, a very broad discretion is vested in the trial courts. It is only when a clear case of abuse of said discretion is made out that this court will interfere with the determination of the trial court on appeal. (*Taber* v. *Taber,* 209 Cal. 755 [290 Pac. 36] ; *Simmons* v. *Simmons,* 22 Cal. App. 448 [134 Pac. 791].)

The record in this case is voluminous and presents evidence which is highly conflicting.

According to that produced by the appellant, respondent is the victim of a mental illness diagnosed by physicians as insanity of the manic depressive type. During their marriage, respondent had two attacks of said illness, the second being so severe as to require her confinement in the State Hospital for the Insane at Patton, California. Since her divorce, respondent has twice been committed to hospitals for the insane in the State of Iowa, and twenty out of the twenty-four months immediately prior to this proceeding she spent either in hospitals for the insane or on parole therefrom. The testimony of physicians and superintendents of hospitals for the insane was generally to the effect that manic depressive insanity seldom causes a deterioration in the mind of its victims, and that during the intervals between attacks their minds usually are perfectly lucid. Several of said experts testified that the disease is cyclic in nature, with the attacks increasing in severity and duration progressively over the years. Others, however, were of the opinion that it is possible for one to become completely cured of the malady. Testimony that two of respondent's brothers had also been confined for certain periods in institutions for the insane was uncontradicted. Appellant disclaims having knowledge of this latter fact at the time the interlocutory decree of divorce was granted.

It is appellant's contention that a change in custody of the child is warranted by the change of circumstances since the original order. As one of these ''changes'' appellant maintains that respondent's two mental attacks since her divorce indicate that she is subject to recurring attacks of manic-depressive insanity; that said disease is incurable; and that during these attacks the child has necessarily been in the custody of other persons at all times, namely, respondent's mother or appellant's parents. Appellant also contends that because he did not know that two of respondent's brothers had suffered mental disorders prior to the entry of the interlocutory decree, and, because this fact had been deliberately concealed from him until after the custody of the child had been awarded to respondent, he now has the right to rely upon this fact as warranting a change in the custody of the child. He asserts that this fact constitutes proof that respondent's mental collapse was due to an inherited tendency and not to appellant's mistreatment of her as contended by respondent, and would have been an influen-

tial factor had it been known at the time of the making of the original order. Furthermore, appellant maintains that the welfare of the child demands a change in custody for the reasons that the child is excitable in nature and may have inherited respondent's family tendency toward mental weakness; because the sight of the mother while subject to her attacks or suffering from her various hallucinations would be detrimental to the child's physical and mental health; and because it is also likely that under such conditions respondent might even do physical harm to the child.

As a further change of circumstances appellant points out that he has remarried and now has a home with which to provide the child.

Since the respondent had suffered two mental attacks prior to the original order awarding custody, it is rather difficult to term two subsequent attacks as changes in circumstances. However, it has been suggested in a previous case decided by this court (*Foster* v. *Foster*, 8 Cal. (2d) 719 [68 Pac. (2d) 719]) that "some fact, secret and hidden at the time of the entry of the former judgment, would in the interest of the welfare of the child, justify a court in modifying the former order of custody despite the fact that there had been no actual change of circumstances . . . ". However, the trial court was of the opinion that the fact of the brothers' mental weakness either could have been learned prior to the original order or that it was not a sufficient change in circumstances to warrant a modification of the decree. (*Olson* v. *Olson*, 95 Cal. App. 594 [272 Pac. 1113].)

It must be borne in mind that in every proceeding to modify a provision for the custody of a minor child the burden is on the moving party to satisfy the court that conditions have so changed as to justify the modification. All presumptions are in favor of the reasonableness of the decree, and in the absence of a showing that compels the conclusion that the decree should be modified, an appellate court cannot interfere with the trial court's refusal to modify it. (*Gavel* v. *Gavel*, 123 Cal. App. 589 [11 Pac. (2d) 654].)

A great deal of testimony was introduced to demonstrate appellant's past unfitness to have the child. It was shown that during his marriage appellant was never able to earn a living for himself and his family, that the mainstay of their support was his wealthy parents and a trust fund established by his grandmother. The moral derelictions with

which appellant was charged were in part admitted and in part denied. A recounting of their details would serve no useful purpose here.

After a consideration of all the evidence we are forced to the conclusion that at times in the past it is probable that neither party to this action was a fit or proper custodian for a minor child. The question as to whether a parent is a fit or proper person to have the custody of a minor child refers, however, to his or her fitness at the time of the hearing and is not necessarily controlled by conduct many years prior thereto. (*Ott* v. *Ott,* 127 Cal. App. 322 [15 Pac. (2d) 896]; *In re Green,* 192 Cal. 714 [221 Pac. 903].) Evidence of prior acts of misconduct may be admissible if it can be said to have a direct bearing upon the issue of present unfitness, but such evidence should be limited to this issue alone.

In the instant case, respondent at the time of the hearing was normal mentally and appeared to the trial court to be a fit person to rear a child. As to the appellant, there was no testimony as to his unfitness at the time of the hearing to have the custody of the child. With regard to his change in circumstances, it was pointed out that, although he was remarried, he married his present wife before her divorce was final. He has as yet obtained no steady employment and himself testified that his earned income approximates but $50 per month, and the family is otherwise maintained by a trust fund income of $62.50 per month, and the $50 per month received by his present wife from her former husband to support the child of their marriage.

According to the testimony of witnesses and the report of the court investigator; the home atmosphere to which appellant could bring the child is very congenial. The trial court struck from its files the first report of the court investigator recommending that the child be awarded to the appellant, and ordered a more full report without recommendation. The general purport of this second report also favored the appellant's custody of the child. Appellant contends that, the fact that this is only the second report of said investigator to have been refused in eleven years, is an indication that the trial court had "prejudged" this case. Such a report, however, is advisory only and the trial judge always has the right to disregard it.

It is impossible to determine whether or not the trial judge was influenced in her decision by an interview with the child,

a girl, nine years of age, for that interview is not a part of the record. Counsel for appellant state that the attorneys for both parties were present at the interview and that the child expressed no preference for her mother but stated merely that she loved both parents.

In the case of *Crater* v. *Crater*, 135 Cal. 633 [67 Pac. 1049], the correct rule for a trial court to follow when considering the modification of a custody decree, is: "The court, in revising and modifying its decree, proceeds upon new facts considered in connection with the facts formerly established, the change of circumstances, the conduct of the parties, and the best interests of the child." These facts were presented to the trial court which, at the same time, had an opportunity to observe the parties and their child. Had the appellant's record been without blemish, we are of the opinion that the child should have been awarded to him. But in view of the highly conflicting evidence as to the fitness of either, as to the nervous reaction of the child after visits to each parent, as to the child's expression of her own desires, and the fact that we, as an appellate court, have no opportunity to observe or form an opinion of the fitness of the parties, we are unable to say that the trial court by refusing to modify the original order, abused its discretion.

Of course, the paramount interest of the court is the welfare of the child. (*Crater* v. *Crater, supra; Bancroft* v. *Bancroft,* 178 Cal. 352 [173 Pac. 582].) Obviously, after observation of both parties, the trial court came to the conclusion that the mother, during mental normalcy, was a better person than the father to rear their minor daughter. Since there was some testimony that the respondent may be fully cured of her affliction, we cannot say that the trial court entirely disregarded the best interest of the child in awarding its custody to her. Furthermore, in order to safeguard the minor's well-being, the court imposed certain conditions upon the respondent, requiring her to maintain a home in other than an apartment house, to have someone live with her at all times, and to have a physical and mental examination every six months. In view of these conditions, and the fact that in the event of the breach thereof, or of another mental collapse on the part of the mother, the court may modify its order, we are unable to say that the conclusion reached by the court would not redound to the best interests of the child.

The appellant complains that the respondent is financially unable to care for the minor. Respondent's income consists of $62.50 per month from the trust fund established by appellant's grandmother, received by her from the appellant as a property settlement at the time of their divorce, and $25 per month paid by appellant as support 'for the child. She stated to the court that her intention is to augment this income by securing part-time employment, or to live with her mother if she finds herself unable to do so. The trial court evidently felt that respondent was capable of properly supporting herself and the child and that she should have an opportunity to prove her ability. Of course, should she at any time fail in this regard, the trial court may modify its custodial award.

Appellant also contends that the trial court erred in awarding counsel fees and costs to the respondent and that the amount awarded was so large as to constitute an abuse of discretion. Such orders have heretofore been upheld by courts of this state upon motions to modify decrees in divorce cases where the rights to the custody of children were involved (*Jacobs* v. *Jacobs,* 68 Cal. App. 725 [230 Pac. 209] ; *Ott* v. *Ott,* 127 Cal. App. 325 [15 Pac. (2d) 897]) ; and in other instances as well. (*Lamborn* v. *Lamborn,* 190 Cal. 794 [214 Pac. 862] ; *Parker* v. *Parker,* 22 Cal. App. (2d) 139 [70 Pac. (2d) 1003] ; *McClure* v. *McClure,* 4 Cal. (2d) 356 [49 Pac. (2d) 584, 100 A. L. R. 1257] ; *Treece* v. *Superior Court,* 113 Cal. App. 728 [298 Pac. 1040].) We do not find the amount so large as to indicate an abuse of discretion in requiring appellant to pay the same.

The order appealed from is affirmed.

Shenk, J., Edmonds, J., Spence, J., *pro tem.,* Houser, J., and Gibson, C. J., concurred.